No. 3–07–0502

Filed February 29, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | |
|---|---|
| THE PEOPLE *ex rel.* THE DEPARTMENT ) | Appeal from the Circuit Court |
| OF TRANSPORTATION, ) | of the 12th Judicial Circuit, |
| ) | Will County, Illinois, |
| Plaintiff-Appellee, ) | |
| ) | |
| v. ) | |
| ) | |
| KOTARA, L.L.C., and BRAIDKOT, LTD., ) | No. 07–ED–008 |
| ) | |
| Defendants-Appellants ) | |
| ) | |
| (Super Valu, Inc., Claypool Drainage and, ) | |
| Levee District, Great Lakes Bank, N.A., ) | |
| Nonrecord Claimants and Unknown ) | Honorable |
| Owners, Generally, ) | Gerald Kinney, |
| ) | Judge, Presiding. |
| Defendants). ) | |

JUSTICE WRIGHT delivered the opinion of the court:

On March 7, 2007, the Illinois Department of Transportation (IDOT) brought suit against

defendant property owners, Kotara, L.L.C., and Braidkot, Ltd. (hereinafter defendant), and other

interested parties[1] to condemn certain real estate under the state's eminent domain power in

connection with plans to improve State Route 113 in Will County. IDOT subsequently moved for

---

[1]IDOT voluntarily dismissed Super Valu from the cause prior to this appeal upon Super
Valu's claim of no interest in the subject property. The remaining named defendants are not
parties to this appeal.

immediate vesting of title for approximately 1.929 acres of defendant's commercial property in Braidwood, Illinois, pursuant to the quick-take provision of the Eminent Domain Act (735 ILCS 30/20–5–10(b) (West 2006)). Defendant filed a traverse and motion to dismiss, alleging IDOT was not exercising the right of eminent domain in good faith, because the appraisal of the subject property was not conducted in compliance with accepted appraisal standards. Following a two-day hearing, the trial court granted IDOT's quick-take motion, entered an order setting preliminary just compensation and denied defendant's motion to dismiss. Defendant appeals, contending the trial court abused its discretion. For reasons that follow, we reverse and remand for further proceedings.

FACTS

The property at issue in this case is a single-storey, 19,000-square-foot grocery store and a 96-vehicle parking lot located along East Main Street (State Route 113) in downtown Braidwood, Illinois. In July 2005, Fred Tadrowski, a real estate appraiser for IDOT, interviewed the grocery store manager to determine the history of the property in anticipation of IDOT's proposed reconstruction of Route 113, between State Routes 53 and 129. The purpose of the project was to improve traffic flow, install traffic lights at the intersection and increase public safety. IDOT's proposed reconstruction required partial taking of the property in fee, and both permanent and temporary easements.

Tadrowski used the comparable sales method to calculate the average value per square foot of the grocery store property to be condemned. He determined the value of the average square foot of the lot was $5.10, and the value of the entire parcel before the partial taking was $1,150,000. Based on these figures, Tadrowski determined that the value of 6,316 square feet of

the parcel to be taken in fee simple was $38,000, and he valued an additional 5,140 square feet to be taken as a dedication, or perpetual easement, at $52,000. He determined damage to the remainder, due to loss of parking spaces and parking reconstruction, equaled $57,000. IDOT also required a temporary easement for construction purposes during the three-year estimated impressment, which Tadrowski valued at $5,000. In sum, Tadrowski estimated the fair market value of the real estate to be affected by the project was $152,000.

In August 2005, another IDOT appraiser, Charles Southcomb, reviewed Tadrowski's appraisal. Southcomb disagreed with Tadrowski's appraisal of the damage to the remainder because of an error in the original engineering report concerning the number of necessary cart returns when the parking lot was reconstructed. Southcomb determined the damage to the remainder should be $72,000, rather than $57,000. Consequently, he concluded the appraised value of the total IDOT taking for the project should be $167,000 rather than $152,000. Southcomb certified that he developed his report under the jurisdictional exception of the Uniform Standards of Professional Appraisal Practice (USPAP) in compliance with the policies and procedures of IDOT and applicable state and federal laws.

After IDOT's appraisal documents were completed, John Kotara purchased the grocery store property from the estate of Dorothy Testa in November 2005, as part of a package deal that included another grocery store in Coal City, Illinois. At the closing on the two parcels, Kotara certified the value of the Braidwood parcel to be $850,000.

In December 2005, IDOT representatives met with John Kotara, president of the defendant companies, and defendant's attorney to discuss just compensation for the takings in fee simple, the perpetual easement, the temporary easement and the damage to the remainder. At that

3

time, IDOT offered to compensate defendant in the amount of $167,000 based on Southcomb's first review of and adjustment to Tadrowski's appraisal.

Defendant objected to the proposed reduction of parking spaces on the property and to IDOT's proposal to close the driveway along Route 113. The driveway entrance and exit along Route 113 had not been previously authorized by IDOT but was operational when Kotara purchased the property from the prior owner.

In order to accommodate defendant's concerns, IDOT engineers offered to reduce the size of the taking by leaving the Route 113 driveway intact but with restricted use as a right-in access only. IDOT also proposed realigning the parking lot spaces by turning them 90 degrees at the state's expense to run parallel to the store and allowing defendant to retain all 96 of the parking spaces.

In July 2006, following IDOT's reconfiguration of the project, Southcomb revised his first review report to reflect the reduced taking. Southcomb's revised review report or second review changed the fair market value of the whole parcel to $875,000, rather than $1,150,000 as reflected in Tadrowski's original appraisal. As a basis for this reduction, Southcomb's 2006 revised review report used comparable sales, which included Kotara's recorded purchase price of $850,000 for the subject property in November 2005.

Southcomb's revised review report adjusted the value of IDOT's reduced taking in fee simple to $40,000, rather than Tadrowski's estimate of $38,000 for the originally proposed taking in fee simple. Southcomb determined damage to the remainder, as modified in response to defendant's objections, to be $60,000, rather than $72,000, which was Southcomb's first calculation. Southcomb adjusted the value of the perpetual easement to $35,000, rather than the

4

original amount of $52,000 and agreed that $5,000 remained the proper amount for the temporary easement. In sum, he proposed total compensation in the amount of $140,000 for the smaller taking, rather than the $167,000 originally offered. IDOT made a written offer to defendant in this amount, $140,000, in August 2006.

Defendant's attorney sent IDOT an e-mail that defendant would accept the offer if Kotara could obtain authorization for both "right-in" and "right-out" access for the driveway on Route 113. IDOT replied that, due to safety considerations, "right-out" access would not be permitted.

On March 6, 2007, after determining further negotiations were futile, IDOT initiated a complaint to condemn defendant's real estate under the state's eminent domain power. On March 16, 2007, IDOT moved for an immediate vesting of title under quick-take procedures and sought a preliminary just compensation determination, anticipating a contract "let" date for construction to begin at the site in August 2007. The cause was set for a May 4, 2007, hearing on the quick-take motion.

The day before this hearing, on May 3, 2007, defendant filed a traverse and motion to dismiss, alleging IDOT had not made a good-faith attempt to negotiate just compensation for the taking of the subject property.

At the May 4 hearing, IDOT moved to strike the traverse motion for failure to give proper notice. The court denied the motion to strike defendant's motion but refused to consider defendant's traverse and motion to dismiss until IDOT received proper notice. IDOT then called Southcomb to testify as the first witness during the quick-take proceeding.

During his testimony at the May 4 hearing, Southcomb stated his opinion that the value of the proposed takings of defendant's property equaled $147,200, rather than $140,000 as set by

5

Southcomb in July 2006 . Southcomb explained that his revised calculations included in his testimony increased the $875,000 whole property value to $910,000. He also adjusted the July 2006 value of $40,000 for the property to be taken in fee simple to $42,000 and increased damages to the remainder to $63,000 as of the date of the hearing. Southcomb testified that he now valued the perpetual easement at $37,000, instead of $35,000, and he increased the value of the temporary easement by $200 for a total value of $5,200.

During cross-examination, Southcomb admitted he did not obtain an updated appraisal from Tadrowski before rendering his revised report of value in July 2006 based on the modified project. Southcomb also agreed that he did not investigate, beyond obtaining recorded documentation, whether Kotara's $850,000 purchase price reflected an accurate value based on an "arm's-length" transaction. Southcomb explained that appraisal standards required him to consider the market value of the property at issue in analyzing comparable sales, because the property was purchased within three years of his revised review report.

Then, during the same cross-examination, defendant's attorney attempted to challenge Southcomb's independent opinion of value contained in the 2006 review report because IDOT did not conduct a review of Southcomb's opinion of value. IDOT's attorney objected. Immediately, the judge reprimanded defendant's attorney by stating, "...[Y]ou are really trying to establish the format for your traverse motion, it seems to me***.I thought I clearly indicated previously that that was not the subject matter of this hearing." Defendant's attorney then apologized to the court and resumed the cross-examination on other issues.

Prior to redirect, the court also instructed counsel for IDOT as follows, "[L]et's avoid the traverse issues until - - *** unless and until there is a hearing on it." Later during the same

6

redirect, counsel for IDOT requested the court's permission to question Southcomb on the appraisal documents, noting that, "It is sort of traverse, but not necessarily." The court allowed the line of inquiry to clarify Southcomb's 2006 revisions to Tadrowski's appraisal.

Jose Rios, a condemnation engineer for IDOT, also testified for IDOT. Rios said that traffic signals had to be installed at the intersections of Route 113 with Routes 129 and 53 to increase traffic safety at these points. He testified about IDOT's negotiations with Kotara based on his review of the "negotiator's log," which he said was maintained by IDOT in the ordinary course of business. The log contained offers to compensate defendant based on IDOT appraisals, IDOT's reduction of the taking to attempt to accommodate defendant and the e-mail from defendant's attorney trying to negotiate for the right-out driveway access along Route 113.

After IDOT rested its case, defendant introduced Kevin Byrnes as his expert appraiser. Byrnes' appraisal assigned $1,140,000 as the whole value for the property, closely approximately Tadrowski's original value of $1,150,000. In addition to the difference in whole value, Brynes' appraisal deviated significantly from Southcomb's revised review report as to the value if the damage to the remainder after the taking. Southcomb valued the damage to the remainder at $63,000. Brynes valued the damages to the remainder at $377,000. Byrnes explained the high value of the damage to the remainder was attributable to his belief that the reconstruction of the parking lot would not meet the demands of a grocery store business and also provide for the safety of the customers.

Following Byrnes' testimony, the court and the attorneys discussed what was needed to complete the hearing. Defense counsel stated he had only one witness, John Kotara, the owner of the subject real estate. The court noted the cause would have to be continued for closing

7

arguments and stated defense counsel would be allowed to examine his client when the case resumed. Following this discussion, the court recessed and continued the cause to May 11, 2007 at 10:30 a.m. The court's written order provided that the hearing was continued "for Defendant to present additional witnesses and oral argument."

On May 8, 2007, the court's clerk called the attorneys to advise that the judge was continuing the May 11 hearing because of "unavailability of the court." The clerk left several dates with the attorneys, and the docket entry states they were to notify the clerk of the new date.

On May 17, defendant refiled its traverse and motion to dismiss and served notice on IDOT. Defendant set this second traverse and motion to dismiss for hearing on the same date as the quick-take hearing, May 22, 2006.

The day before this hearing, the clerk entered a notation in the minute sheet that reads, "All pending motions, quick-take hearing, and initial case management conference is continued to 6/25/07 at 10:30." On the same date, a subsequent entry by the clerk postponed the hearing by two days with the following entry: "No Written Order  [–]  Long Hearing/ Special Setting June 27, 2007 10:30 a.m." The time was later reset for 1:30 p.m. on June 27, 2006. Following these entries, the record shows attorney Asaro canceled the hearing on the traverse and motion to dismiss previously set to take place the next day, on May 22.

As scheduled, the quick-take hearing resumed on June 27, 2007. The clerk's minute entry for that date begins, "case called for Quick-take hearing and Defendant's motion to dismiss."

Counsel for defendant called Anthony Uzemak as his first witness to rebut IDOT's evidence of good-faith negotiations. The court ruled Uzemak could not testify in the quick-take matter and refused to allow counsel to make an offer of proof. The judge stated that the defense

8

would not be allowed to call their witness because Uzemak was not present in court on May 4, 2007, when the hearing was recessed, and defendant had not previously disclosed Uzemak as a witness. The court admonished defendant's attorney that the only matters remaining to be heard on the quick-take motion were John Kotara's testimony and the arguments of counsel.

John Kotara testified about his experience as a grocery store owner and developer. He said he acquired the subject property from Testa's estate as part of a package deal in November 2005, although he only was seeking the Coal City grocery store at the time. He said his lawyer and the real estate agent arrived at the $850,000 value for the Braidwood real estate. He stated that he signed the documents prepared by his attorney at the closing, even though he believed the property was worth much more.

Kotara opined that IDOT's configuration would be unsafe for his customers when backing their cars out of their parking spaces. Kotara admitted he did not have any engineering experience and had not hired his own engineer to assess IDOT's proposed reconfiguration of the parking lot. Kotara agreed the traffic pattern for the parking lot, as configured by IDOT, would be similar to the pattern in use before he purchased the property in 2005. During cross-examination, he conceded that he and his attorney met with IDOT officials to discuss the proposed acquisition two or three times before suit was filed, but he denied that he authorized his attorney to accept the $140,000 offer as just compensation.

Following John Kotara's testimony, counsel for defendant renewed his request to call Uzemak to testify regarding Southcomb's deviation from USPAP standards in preparing his revised review report in 2006. The court denied counsel's request. The court also refused to permit counsel to present an offer of proof. The judge noted that the witness was brought into

9

the case in the middle of the hearing, and if the witness had been in court for the May 4 hearing, he would have allowed the witness to testify.

Following arguments of counsel, the court found IDOT had proved the elements of its quick-take motion and set preliminary just compensation at $147,200. The court denied defendant's traverse and motion to dismiss. Defendant appeals.

## ISSUES AND ANALYSIS

Defendant contends that this state's eminent domain law, together with case law, required the circuit court to hear evidence bearing on IDOT's good-faith negotiations. Specifically, defendant argues that the trial court abused its discretion by refusing to allow defendant to test Southcomb's determination of value and improperly denied his request to introduce Uzemak's testimony in an offer of proof. Defendant asserts this testimony was required to establish that IDOT did not negotiate in good fath.

Conversely, IDOT contends the trial court acted within its discretion in by restricting defendant's cross-examination of Southcomb and by refusing defendant's offer of proof. According to IDOT, compliance with USPAP and the Land Acquisition Manual was not required to prove IDOT's good-faith negotiations with defendant.

In *Department of Transportation ex rel. People v. 151 Interstate Road Corp.,* 209 Ill. 2d 471, 478 (2004), our supreme court addressed the issue of whether a condemning authority's good-faith negotiations with a property owner could be challenged with an interlocutory appeal from quick-take proceedings brought under section 7–104 of the Eminent Domain Act (735 ILCS 5/7–104 (West 2000) (currently, 735 ILCS 30/20–5–10(b) (West 2006)). Before analyzing that question, the court discussed applicable statutory procedures:

10

"Section [20–5–10] of the Eminent Domain Act sets forth certain of the

procedures to be followed in 'quick take' condemnation proceedings. 'Quick take'

proceedings provide a means to prevent delays to public projects that could result pending

the final determination of just compensation, while at the same time protecting the rights

of the landowner. Under the 'quick take' provisions of the Eminent Domain Act, a

condemnor files a motion for title and/or possession and the court enters a preliminary

finding concerning the amount of just compensation. ***

Before the court may enter a preliminary finding concerning the amount of just

compensation in a 'quick take' proceeding, section [20–5–10(b)] of the Eminent Domain

Act requires the court to first hear and determine: (1) that the plaintiff has authority to

exercise the right of eminent domain, (2) that the property sought to be taken is subject to

the exercise of such right, and (3) that such right is not being improperly exercised in the

particular proceeding. [735 ILCS 30/20-5-10(b) (West 2006)]. Section [20–5--10(b)]

provides that the court's order on these matters is appealable. Because section [20–5--

10(b)'s] provisions are expressly incorporated into our Rule 307(a)(7), the court's order is

immediately appealable to the appellate court even though it is interlocutory in nature."

*151 Interstate Road Corp.,* 209 Ill. 2d at 478-79.

Turning to the specific issue on review in that case, the court determined that good faith

negotiation with the property owner for the amount of compensation to be paid for takings was a

condition precedent to condemnation proceedings under the Act. The court then ruled that,

"absent good-faith negotiations regarding the amount of compensation a landowner

11

should receive, any attempt to exercise the right to eminent domain would not comply with the Eminent Domain Act and would be fatally defective." *151 Interstate Road Corp.,* 209 Ill. 2d at 481.

Accordingly, the court concluded the question of IDOT's good faith fell within the provisions of section 20–5–10(b) of the Act and could be challenged in an interlocutory appeal from the quick-take proceeding.

The core issue in this case concerns whether a court may forbid a property owner from challenging the good-faith basis of IDOT's negotiations by attacking the methodology used to determine whole value and other calculations based on the value of the parcel. During his cross-examination of Southcomb, defendant sought to establish Southcomb calculated these values without following industry standards established by USPAP and IDOT's Land Acquisition Manual. Sustaining IDOT's objection, the court truncated the defense by restricting cross-examination. The court subsequently refused to allow the defense to call an expert witness on the issue of good faith and would not allow counsel to make an offer of proof in order to perfect the record for purposes of appeal.

Before applying the law to the facts of this case, a succinct summary of the posture of the undisputed numerical facts is necessary. IDOT's first offer of $167,000, made to Kotara after his purchase of the property, was based on Southcomb's first review report which did not question Tadrowski's whole value determination at $1,150,000 or include an independent comparable sale analysis by Southcomb. Importantly, the subsequent $140,000 offer to Kotara was based on Southcomb's second revised review report, necessitated by the proposed reduced taking. This second or revised review report was based on a comparable sales analysis which included

12

Kotara's purchase price. Southcomb substituted his independent opinion reducing the whole value down to $875,000 from Tadrowski's original appraisal of whole value of $1,150,000. Southcomb's second review reduced both the whole value as well as the size of the property to be taken.

IDOT made both offers to Kotara *after* he purchased the property. The first offer did not reflect Kotara's purchase price in the comparable sales analysis because Tadrowski gathered the data before Kotara's purchase. The appraisal performed by Brynes, plaintiff's expert, which also gathered information after Kotara's purchase, set the whole value at $1,140,000 and supported a discussion that Southcomb's independent opinion of value was flawed.

In a nutshell, defendant hoped to challenge the reliability of Southcomb's second or revised review report on the basis that the revised review report operated as an appraisal. As an appraisal, it should have been subject to a review, or double-checked, by another appraiser pursuant to USPAP and IDOT regulations because it established a new whole value. The judge's ruling prevented this challenge to the good-faith basis for the second revised review report which reduced the first $167,000 offer to Kotara to $140,000, not only based on the reduced taking but, more importantly, based on a $300,000 reduction to the whole value from $1,150,000 to $875,000.

Counsel offered the testimony of Uzemak as his first witness to rebut IDOT's evidence of good faith negotiations. The trial court refused to allow counsel to make an offer of proof on the content of Uzemak's testimony. The purpose of an offer of proof is to indicate to the trial court, opposing counsel and a court of review the nature and substance of the proposed evidence. *People v. Robinson*, 56 Ill. App. 3d 832, 837 (1977). A court's refusal to permit counsel to make

13

an offer proof or state what evidence he is offering at a proper stage of trial is error. *Blazina v. Blazina*, 42 Ill. App. 3d 159, 166; see also *People v. Thompkins*, 181 Ill. 2d 1, 9-10 (1998) ("Trial courts are required to permit counsel to make offers of proof, and a refusal to permit an offer generally is error."), and authority cited therein.

Although we conclude it was error to refuse to allow the offer of proof, the general purpose of Uzemak's testimony can be gleaned from the record in this case. It is apparent from the record that counsel offered Uzemak to challenge Southcomb's second review as an appraisal that had not been independently reviewed pursuant to USPAP and IDOT regulations. The court felt this topic was irrelevant.

As a general rule, a party is entitled to present evidence which is relevant to its theory of the case. *People v. Wheeler*, 226 Ill. 2d 92, 132 (2007). However, the admissibility or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed on review absent a clear abuse of discretion. *Board of Trustees of the University of Illinois v. Shapiro*, 343 Ill. App. 3d 943, 952 (2003). An abuse of discretion may be found only where the trial court's decision is arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Illgen,* 145 Ill. 2d 353, 364 (1991).

Here, although the judge did not clearly state the court's rationale for limiting defense counsel's cross-examination of Southcomb, it appears the court mistakenly believed defendant's proposed theory of defense, which involved the issue of good faith, was not relevant to the quick-take motion.[2]

---

[2]Other bases suggested by defendant as the court's reasons for barring his offer of proof include the proffered witness's absence on the first day of the hearing and failure to provide prior disclosure of the witness. These reasons appear arbitrary. See *People v. Dahlberg*, 355 Ill. App.

14

Counsel for IDOT informed the trial judge in this case that, "Mr. Southcomb's subsequent review is a continued negotiation." Our supreme court has held that the issue of whether IDOT's negotiations were conducted in "good faith" is relevant to a quick-take proceeding. *151 Interstate Road Corp.,* 209 Ill. 2d at 480-81. A reviewing appraiser's deviation from recognized standards could impact the accuracy of the review report and the good-faith basis for the offer. A condemnor's use of a flawed review report for purposes of negotiating compensation for the proposed taking is relevant to the issue of condemnor's "good faith".

If IDOT's negotiations with defendant were not conducted in good faith, then the right of eminent domain was not properly exercised, and the quick-take motion should have been denied. See *151 Interstate Road Corp.,* 209 Ill. 2d at 480-81; 735 ILCS 30/20–5–10(b) (West 2006). We conclude noncompliance with USPAP and the Land Acquisition Manual constituted a relevant basis for challenging whether the negotiations in this case satisfied the "good faith" requirements. The court's ruling to the contrary was erroneous.

We next consider the court's decision prohibiting defendant from calling any witnesses other than Kotara following a six-week recess. The court's written order entered at the close of the May 4, 2007, hearing did not provide defendant with notice that defendant would be limited to one additional witness when the case resumed. In fact, the judge's order plainly stated defendant would be allowed to present "additional witnesses."

In this truth-seeking process, additional witnesses may be called even though they were

3d 308, 316 (2005) (trial judge's hasty declaration of a mistrial and refusal to afford counsel an opportunity to be heard on the relevance of his line of inquiry on cross-examination of the State's witness constituted an abuse of discretion).

15

not anticipated to be necessary during the previous stages of the proceeding. Here, the court's unwillingness to allow cross-examination of Southcomb necessitated defendant's decision to call his own witness, since he was not allowed to introduce the theory that the Southcomb review report was flawed. The court's explanation, for restricting the number of witnesses for the defense and denying counsel an opportunity to make an offer of proof, was both unreasonable and arbitrary. See *Blazina*, 42 Ill. App. 3d at 166; *Thompkins*, 181 Ill. 2d at 9-10.

Equally arbitrary was the court's refusal to consider the "good faith" issue because the evidence overlapped the underpinning of defendant's traverse and motion to dismiss, which the court initially preferred to hear at a later time. A mere overlap in the evidence for the two related motions does not justify barring the introduction of relevant evidence on the motion the court prefers to hear first in time. We further find that the court abused its discretion when it denied defendant's traverse and motion to dismiss without calling the matter for hearing that day.

Defendant also argues he is entitled to an outright reversal based on the evidence because the trial court's decision was contrary to the manifest weight of the evidence. We acknowledge the issue, but choose not to weigh the evidence in this case because the record was devoid of any evidence to support defendant's theory of defense due to the court's ruling. We observe the court's approach unreasonably restricted both parties from delving into areas related to the traverse and motion to dismiss.

Here, our purpose is to remedy the abuse of discretion which occurred by the trial court, not to decide the merits of the case on the body of evidence which was unreasonably restricted by the court. We have concluded the best remedy in this case is to remand the matter for a new quick-take hearing conducted under neutral conditions which do not place either party at either an

advantage or disadvantage.

In summary, the trial judge abused his discretion by both restricting cross-examination of Southcomb and by prohibiting defendant from calling his expert witness or making an offer of proof on the subject of his expert witness's testimony. As a consequence, the cause must be remanded for further proceedings on both motions. We remand the cause to allow both parties to fully develop the issue of good-faith negotiations without unreasonable restrictions imposed by the court.

## CONCLUSION

The judgment of the circuit court of Will County granting IDOT's quick-take motion and denying defendant's traverse and motion to dismiss is reversed, and the cause is remanded for further proceedings in compliance with this opinion.

Reversed and remanded.

HOLDRIDGE and O'BRIEN, JJ., concurring.