2020 IL App (1st) 190209

No. 1-19-0209

Opinion filed June 11, 2020

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ADDISON DYNEK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 L 4508 |
| | ) | |
| THE CITY OF CHICAGO, | ) | Honorable |
| | ) | Janet Brosnahan, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Reyes and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     The trial court entered judgment on the jury's verdict, which found defendant, the City of

Chicago (City), not liable in the negligence cause of action brought by plaintiff, Addison Dynek.

¶ 2     On appeal, Dynek argues that he is entitled to a new trial based on the trial court's alleged

errors regarding jury instructions, special interrogatories, motions *in limine*, the exclusion of

evidence, and the City's improper statements during closing argument. Dynek also argues that the

trial court abused its discretion by denying his motion for sanctions based on defendant's alleged

discovery violation.

¶ 3      For the reasons that follow, we affirm the judgment of the trial court.[1]

¶ 4                                    I. BACKGROUND

¶ 5      In October 2015, Dynek had a bicycle accident while riding over the Chicago Avenue bridge. He sued the City for negligence, alleging that his front tire went into a hole created by a "broken grating bar" on the bridge, causing him to fall and sustain injuries. Dynek alleged the City was negligent by failing to repair the hole and by making the bridge part of a bicycle route even though the bridge was not safe for cyclists.

¶ 6      Among its affirmative defenses, the City asserted that the condition described by Dynek was reasonably safe, he was comparatively negligent, the City was entitled to discretionary immunity for its designation of bicycle routes, and the statute of repose barred a claim based on the design of the bridge.

¶ 7      At trial, Dynek testified that he usually rode his bicycle east on Chicago Avenue to get to his office on La Salle Street. Chicago Avenue did not have designated bike lanes, but Dynek believed that the signs on Chicago Avenue showing bicycle symbols and distances to various destinations, like the lakefront, "[told] bikers where to go." He took Chicago Avenue because it was the most direct route for his commute. Although Kinzie Street had a protected bike lane, he did not take Kinzie Street because that route would have been longer for him to get to work. He had previously ridden his bicycle over the Chicago Avenue bridge without difficulty.

¶ 8      About 8:30 a.m. on the date in question, Dynek rode east on Chicago Avenue "just going with the flow of traffic." Traffic was moving at the bridge, which had two eastbound lanes for

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

traffic. He was riding in the right eastbound lane on the bridge when a car stopped suddenly in front of him and "cut off" his path. It was impossible to get around the car on its right side, so he turned his bicycle to the left to get around the car. His bicycle then "stopped," causing him to fall. After he fell, he looked back at his bicycle and saw that it was "lodged in the grate" on the bridge.

¶ 9 Later, he returned to the bridge and determined that his bicycle "got trapped" at the centerline between the eastbound and westbound traffic and between grating panels where there was "also an old broken grating bar." The broken grating bar was just west of a portion of the bridge that was filled with concrete, which was at "[t]he middle section of the bridge." Dynek testified that the broken grating bar and gap between grating panels, together, caused his accident. He acknowledged, however, that his earlier affidavit describing the accident did not mention a gap between grating panels.

¶ 10 Eyewitness Peter Taub testified that he was riding his bicycle behind Dynek at the time in question. Taub estimated that Dynek was traveling about 20 miles per hour as he approached the bridge. Eastbound vehicular traffic near the bridge was not moving, and Dynek was riding his bicycle between the stopped cars. Taub said that it was typical during the morning rush hour for bicyclists to try to make their way through stopped vehicles. Taub did not see the accident. When he reached the bridge, he saw that Dynek was lying on the westbound lane of the bridge and Dynek's front bicycle tire was lodged in a gap between the metal grates and oriented in an eastbound direction. The space where the bicycle got lodged was between the eastbound and westbound lanes and just past the crest of the bridge and east of the bridge's concrete center portion. Taub did not recall seeing a broken grating bar where the bicycle was lodged.

¶ 11    Cathryn Shubert testified that she had a bicycle accident over the Chicago River on the La Salle Street bridge, which also had metal grates. She stated that bicyclists had to navigate that bridge by going straight and not turning their front wheel or else it would get stuck in a gap between grating panels. Her accident happened when she tried to maneuver around a car in front of her, but her tire did not get stuck in a gap between grating panels. Afterward, she petitioned the City to examine the safety of metal grate bridges for bicyclists, and the City hired engineering firm T.Y. Lin for that purpose.

¶ 12    In 2004, T.Y. Lin issued a report that identified ways to improve metal grate bridges and make them safer for cyclists. The report found that the metal grating on bridges could cause a channeling effect or sliding for bike tires and narrow tires could become lodged in the gaps between bridge grates. Longitudinal gaps, which were oriented in the direction of travel, were the most problematic for cyclists. The report rated the deck quality of the Chicago Avenue bridge as poor.

¶ 13    Mike Amsden was the assistant director of transportation planning at the City's transportation department at the time of Dynek's accident. Amsden was in charge of the City's bike map in 2014 and 2015 and did not know about the T.Y. Lin report until Dynek sued the City. The City's bike map designated Chicago Avenue between Elston Avenue and the lakefront as a signed bike route but had a squiggly line over the Chicago Avenue bridge, which warned cyclists to use caution there. Amsden stated that metal grate bridges were a "fact of life" that people had to cross throughout the City, but he knew these bridges were difficult and intimidating for cyclists to cross at times. He relied on his personal judgment when he designated signed bike routes and considered factors like destinations, street widths, traffic volume and street ownership.

¶ 14    Amsden chose to designate Chicago Avenue as a signed bike route because it connected to many mass transit lines, the lakefront trail, and the bike lanes on Milwaukee Avenue. The width and amount of vehicular traffic on Chicago Avenue did not have enough space to install bike lanes. Amsden rejected the option of designating Division Street as a bike route because Division Street had two bridges over the Chicago River and connected to fewer destinations whereas Chicago Avenue had just one bridge. He also rejected North Avenue, which was a state route, was narrow, and had highspeed traffic. Grand Avenue also had highspeed traffic. Amsden stated that it was nonsensical to designate a bike route using a bridge that had a better rating for cycling but was miles away from the route.

¶ 15    Amsden described the Chicago bike 2015 plan, which the City published in 2006, as a planning document with aspirational goals and objectives to make the City more bike friendly. Although the plan recommended retrofitting metal grate bridges to make them safer for cycling, the plan's recommendations were not mandatory. Moreover, the plan did not mention longitudinal gaps in the center of a roadway, and Amsden did not expect cyclists to ride in the center of the road.

¶ 16    Luis Benitez, the chief bridge engineer of the City's transportation department, testified that the Chicago Avenue bridge used metal grating panels after it was resurfaced in 1960 from wood to metal. This bridge, which would rise open to allow boat traffic to pass beneath it, used metal grates to minimize weight and allow drainage. The longitudinal gaps between grating panels were a design feature that accommodated the expansion and contraction of the metal grates during changes of temperature. Inspection reports from 2010 and 2014 noted that some of the grating bars

on the Chicago Avenue bridge were broken, but broken grating bars did not cause structural concerns.

¶ 17    Dynek presented the testimony of Greg Pestine, a civil engineer, who opined that the 1.75 inch wide gap between grating panels and a broken grating bar in the vicinity of that gap caused Dynek's accident. The engineering field recognized that gaps between grating panels on a metal grate bridge can be hazardous for bicyclists. Pestine opined that the longitudinal gap between grating panels on the Chicago Avenue bridge violated the safety standards of the American Association of State Highway Transportation Officials and the Federal Highway Association.

¶ 18    Dynek moved for a directed verdict on the question of whether the City had notice that the Chicago Avenue bridge was dangerous for bicyclists. The City opposed the motion, arguing that the jury heard evidence that the condition Dynek complained of did not present an unreasonable risk of harm to bicyclists. The court agreed with the City and denied Dynek's motion.

¶ 19    The jury reached a verdict in favor of the City and, by answering special interrogatories, found that Dynek was contributorily negligent, Amsden determined policy and exercised discretion when he designated Chicago Avenue as a signed bike trail, and the City was not negligent by failing to repair a broken grating bar on the Chicago Avenue bridge and by designating the Chicago Avenue bridge as part of a bike route.

¶ 20    Dynek moved the court for a judgment notwithstanding the verdict, a new trial based on the court's allegedly erroneous rulings on evidence and jury instructions, and sanctions based on the City's alleged discovery violation. The court denied Dynek's motions, and he appealed.

¶ 21                                    II. ANALYSIS

¶ 22     Dynek argues that he is entitled to a new trial due to the trial court's alleged erroneous rulings regarding jury instructions, special interrogatories, motions *in limine*, motion for a directed verdict, and the City's improper statements during closing argument. He also argues that the trial court abused its discretion by denying his motion for sanctions based on the City's alleged discovery violation.

¶ 23                               A. Jury Instructions

¶ 24     Dynek argues the trial court erred by instructing the jury about the statute of repose because his pleadings, which did not allege negligent operation and maintenance of property, did not implicate that statute and the trial evidence did not support that instruction. Dynek argues that the statute of repose was irrelevant and the jury was given no guidance concerning how to apply it.

¶ 25     "The trial court has discretion to determine which instructions to give the jury and that determination will not be disturbed absent an abuse of that discretion." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273 (2002). A trial court abuses its discretion when its decision is arbitrary, fanciful, unreasonable, or where no reasonable person would adopt its view. *People ex rel. Department of Transportation v. Kotara, L.L.C.*, 379 Ill. App. 3d 276, 286 (2008). This discretion of the trial court includes determining which issues are raised by the evidence presented at trial and which jury instructions are thus warranted. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 549 (2008). "All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction." *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007). Moreover, an instruction does not justify reversal unless it "clearly misled the jury and resulted in prejudice to the appellant." *Schultz*, 201 Ill. 2d at 274.

¶ 26    According to the record, when the City proposed a jury instruction that presented affirmative defenses, including one based on the statute of repose, Dynek objected, arguing that his pleadings did not allege a design defect or construction-related issue and thus did not implicate the statute of repose. He also argued that the City's proposed instruction failed to use the actual language of the statute of repose.

¶ 27    The trial court ruled that an instruction about the statute of repose was appropriate because the trial testimony made a "big deal about the longitudinal gap" on the Chicago Avenue bridge and the jury could find from that evidence that the longitudinal gap was the only thing that caused Dynek's injury. The court ruled, however, that the statute of repose would not be presented as an affirmative defense because that would confuse the jury. Instead, the City was allowed to argue that it could not be held liable for the longitudinal gap because it was a structural design issue that was over 10 years old. The court used Illinois Pattern Jury Instructions, Civil, No. 60.01 (rev. Dec. 2011) to create the nonpattern instruction Dynek challenges on appeal.[2]

¶ 28    The complained of instruction stated:

> "There was in force in the state of Illinois at the time of the occurrence in question a certain statute which provided no action based upon tort, contract, or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation, or management of construction or construction of an improvement to real property after ten years have elapsed from the time of such act or omission."

---

[2]Because the jury used a nonpattern jury instruction, we do not address Dynek's groundless argument challenging this instruction based on the court's exclusion of the irrelevant second paragraph of Illinois Pattern Jury Instructions, Civil, No. 60.01 (rev. Dec. 2011).

¶ 29    We find that the trial evidence justified the nonpattern instruction about the statute of repose, which bars actions "against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission." 735 ILCS 5/13-214(b) (West 2018). The nonpattern instruction followed the language of the statute, and the jury heard evidence that a design feature of the Chicago Avenue bridge could have caused Dynek's accident. Specifically, Benitez testified that longitudinal gaps between grating panels on the Chicago Avenue bridge were a design feature since 1960. Taub testified that Dynek's bicycle became lodged in a longitudinal gap on the east side of the crest of the bridge, which was not where the broken grating bar was located. Amsden and Pestine testified about the danger that gaps between grating panels posed to bicyclists. This testimony could have led the jury to find the City liable based solely on the existence of the longitudinal gap design feature even though the statute of repose did not allow Dynek to recover on that basis because that feature was more than 10 years old. The trial court's nonpattern instruction about the statute of repose made clear to the jury the legal principle that Dynek could not recover if only the longitudinal gap caused his injury.

¶ 30    Dynek also argues that the court erred by rejecting his proposed instruction No. 29, which would have informed the jury that "[t]he City previously took the position[s] in this case that a metal grate bridge is an obvious danger to any bicyclist" and "that metal grating tends to deflect bicycle wheels and makes staying upright a challenge." This argument lacks merit. According to the record, the City withdrew its first motion for summary judgment, which had argued that the "potential danger posed by [a metal grating] surface is readily apparent to anyone who has ridden a bicycle." That statement does not constitute a judicial admission of danger by the City because

it was not clear, unequivocal, and uniquely within the City's personal knowledge. See *Abruzzo v. City of Park Ridge*, 2013 IL App (1st) 122360, ¶ 36. Rather, the statement, which appeared in a motion the City later withdrew, mentioned a *potential* danger and addressed how *a typical bicyclist* would have perceived the bridge. The trial court acted within its discretion by rejecting Dynek's instruction No. 29.

¶ 31 Last, Dynek argues the court erred by rejecting his instruction Nos. 7 and 27, which pertained to the City's alleged concealment of prior similar lawsuits involving bicycles that crashed on metal grate bridges. We find no abuse of discretion here because, as discussed below, the record supports the trial court's ruling that the City did not conceal that information.

¶ 32                                    B. Special Interrogatories

¶ 33 Dynek argues the trial court committed reversible error when it gave the jury four special interrogatories that were all improper because the interrogatories asked compound questions or contained multiple questions and subparts, rather than consisting of a single direct question.

¶ 34 Section 2-1108 of the Code of Civil Procedure governs special interrogatories and states:

> "Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with

the general verdict, the former controls the latter and the court may enter judgment accordingly." 735 ILCS 5/2-1108 (West 2016).

¶ 35    The trial court has no discretion to reject a special interrogatory that is in proper form. *Thomas v. Johnson Controls, Inc.*, 344 Ill. App. 3d 1026, 1033 (2003). A special interrogatory is in proper form if "(1) it relates to an ultimate issue of fact upon which the rights of the parties depend, and (2) an answer responsive thereto is inconsistent with some general verdict that might be returned." *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002). A special interrogatory's response is inconsistent with a general verdict only where it is "clearly and absolutely irreconcilable with the general verdict." (Internal quotation marks omitted.) *Id.* at 555-56. The purpose of a special interrogatory is not to instruct the jury but to serve as a check on the jury's deliberation and to enable the jury to determine one or more specific issues of ultimate fact. *Id.* at 555. Additionally, a special interrogatory (1) should consist of a single direct question, (2) should not be prejudicial, repetitive, misleading, confusing or ambiguous, and (3) should use the same language or terms as the tendered instructions. *Id.* at 563. We review a trial court's ruling regarding a request for a special interrogatory *de novo*, *i.e.*, without any deference to the trial court. *Garcia v. Seneca Nursing Home*, 2011 IL App (1st) 103085, ¶ 35.

¶ 36    According to the record, the trial court gave the jury the following four special interrogatories, which the jury answered as indicated below by an "X." Each special interrogatory was given to the jury on a separate page. The City proposed the first and second special interrogatories. The trial proposed the third and fourth special interrogatories, which aimed to identify "what theory [the jury is] finding liability on" in the event of a verdict in Dynek's favor.

"1. Was there contributory negligence on the part of Addison Dynek before and at the time of the occurrence which was more than 50 percent of the proximate cause of his injury?     __X__Yes     _____No"

"2. On or before October 19, 2015, did Mike Amsden of the City of Chicago Department of Transportation serve in a position involving the determination of policy or the exercise of discretion?__X___Yes     _____No

If you answer no, please stop here and answer no further questions on this page.

If you answered yes to the question above, please answer the following question:

On or before October 19, 2015, did Mike Amsden both determine policy and exercise discretion regarding the designation of Chicago Avenue as a signed bike route?  __X_Yes ___No"

"3. Was the City of Chicago negligent in failing to repair a broken or corroded metal grating bar on the Chicago Ave. Bridge, which it knew or should have known presented an unreasonable risk of harm?         _____Yes __X__No

If your answer to the above question is "no," stop here and do not answer the next question.

If you answer to the above question is "yes," answer the next question:

Was the City of Chicago's negligent failure to repair a broken or corroded metal grating bar on the Chicago Ave. Bridge a cause of Plaintiff's injuries on October 19, 2015?

_____Yes          _____No"

"4. Was the City of Chicago negligent in designating the Chicago Avenue Bridge part of a bicycle route when it knew or should have known that the Chicago Avenue Bridge presented an unreasonable risk of harm for bicyclists?

_____Yes     __X__No

If your answer to the above question is "no," stop here and do not answer the nest question.

If your answer to the above question is "yes," answer the next question:

Was the City of Chicago's negligent designation of the Chicago Avenue Bridge as part of a bicycle route a cause of plaintiff's injuries on October 19, 2015?_____Yes     _____No"

¶ 37    We agree with Dynek that special interrogatory No. 1 was impermissibly compound because it required the jury to consider multiple questions relating to the cause of Dynek's injuries. The jury was asked (1) whether Dynek was contributorily negligent; (2) if so, whether his negligence proximately caused his injuries; and (3) if so, whether the negligence attributable to him was greater than 50% of the total negligence contributing to his injuries. Those multiple questions rendered the interrogatory impermissibly compound. See *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 37.

- 13 -

¶ 38    Although special interrogatory No. 2 had a subpart and thus asked the jury two questions, neither question was improperly compound. Special interrogatory No. 3 also had a subpart and thus asked the jury two questions, but the first question was improperly compound, asking the jury whether the broken metal grating bar presented an unreasonable risk of harm and whether the City knew or should have known about that risk. Similarly, special interrogatory No. 4 impermissibly asked the jury a compound question in the first of its two subparts, *i.e.*, whether the Chicago Avenue bridge presented an unreasonable risk of harm for bicyclists and whether the City knew or should have known about that risk. The form of special interrogatory Nos. 1, 3 and 4 was "in direct contradiction to the established rule that a special interrogatory must be phrased as a single, straightforward question." *Id.* We find, however, that special interrogatory No. 2 did not violate this rule because each subpart of that interrogatory was a single, straightforward question.

¶ 39    It can be reversible error to refuse a special interrogatory that is in proper form. See *Van Hattem v. Kmart Corp.*, 308 Ill. App. 3d 121, 132 (1999). However, a court's decision to submit a special interrogatory can merit a new trial "only upon a showing of prejudice to the complaining party or jury confusion." *Douglas v. Arlington Park Racecourse, LLC*, 2018 IL App (1st) 162962, ¶ 66.

¶ 40    Dynek cannot show prejudice to him or jury confusion because the court did not enter judgment in favor of the City based on any special interrogatory answer. Rather, the jury reached a general verdict in favor of the City, and the court entered judgment on the verdict. The answers to the four special interrogatories were consistent with the general verdict and merely showed that the jury also found in favor of the City on each of the issues the special interrogatories addressed. See *id.* ¶ 72 (even if the special interrogatory was improperly given, the reviewing court could not

"see how plaintiffs could possibly establish prejudice from the special interrogatory, standing alone," where the special finding was consistent with the general verdict). The special interrogatories tracked the trial court's proper instructions on the issues of contributory negligence, discretionary immunity, and Dynek's theories of the City's alleged negligence, and the jury's answers were consistent with the verdict. We do not find that the jury was confused when the general verdict and special finding were perfectly consistent. See *id.* ¶ 73.

¶ 41 We conclude that Dynek cannot obtain a new trial on the basis that the court gave the jury special interrogatories that were not in the proper form because Dynek has not shown prejudice or jury confusion.

¶ 42                                C. Motions *in Limine*

¶ 43 Dynek argues that he is entitled to a new trial based on the trial court's allegedly erroneous rulings on motions *in limine* and the admission of evidence during the trial. We review the trial court's decisions on motions *in limine* and the admission of evidence at trial for an abuse of discretion. *Inman v. Howe Freightways, Inc.*, 2019 IL App (1st) 172459, ¶ 140; *Boyd v. City of Chicago*, 378 Ill. App. 3d 57, 67 (2007). The exclusion of cumulative evidence is also within the discretion of the trial court. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002).

¶ 44 First, Dynek argues the court erred by granting the City's motion *in limine* No. 20, which sought to bar evidence of maintenance on bridges other than the Chicago Avenue bridge. Dynek argues the City's improvements to other metal grate bridges were relevant to the issue of notice and would have shown that the City knew metal grate bridges were dangerous to bicyclists. Dynek also argues the court's ruling prevented him from showing that the City had a ministerial duty to make metal grate bridges safer for cyclists. The trial court barred evidence regarding ways the City

could have improved the Chicago Avenue bridge because Dynek's negligence claim was not based on a failure to improve the Chicago Avenue bridge and the barred evidence incorrectly suggested the City had a duty to improve that bridge.

¶ 45    We find no abuse of discretion here. See *Horrell v. City of Chicago*, 145 Ill. App. 3d 428, 432 (1986) (the City does not have a duty to improve its property). Furthermore, the exclusion of this evidence did not prejudice Dynek because Amsden testified that he knew metal grate bridges made cycling more challenging and could be difficult and intimidating to cross at times. *Dillon*, 199 Ill. 2d at 495 ("the exclusion of cumulative evidence is within the discretion of the trial court"). Moreover, Dynek's theory of a ministerial duty lacks merit. Improvements become ministerial only when a municipality begins to undertake them; at that point, the City has a duty "to see that the work is done in a reasonably safe and skillful manner." (Internal quotation marks omitted.) *Greene v. City of Chicago*, 73 Ill. 2d 100, 108 (1978). Dynek presented no evidence showing that the City had commenced improvements to the Chicago Avenue bridge.

¶ 46    Next, Dynek argues the court erred by denying his motion *in limine* No. 12, which sought to bar Amsden from testifying about the deliberative process the City used to designate bicycle routes. Dynek argues that the City failed to disclose its intention to elicit that testimony from Amsden. The trial court, however, allowed Amsden's testimony about this topic because Dynek had identified Amsden as a witness, the City disclosed that it had reserved the right to call any witness Dynek disclosed regarding any subject matter the witness discussed at a deposition, and Amsden's deposition testimony showed that he was asked about the planning process the City used to designate bicycle routes. We find no abuse of discretion here. See Ill. S. Ct. R. 213(g) (eff. Jan.

1, 2018) ("[i]nformation disclosed in a discovery deposition need not be later specifically identified in a" party's disclosure of witnesses).

¶ 47    Next, Dynek argues the court erred by granting the City's motion *in limine* No. 36, which sought to exclude a photograph of the Chicago Avenue bridge from 2011, four years before Dynek's accident. The photograph, which depicted the bridge when it was under construction and had barricades to guide traffic, did not resemble the scene Dynek encountered on the date of his accident. Accordingly, we find no abuse of discretion by excluding the irrelevant photograph, which could have confused the jury.

¶ 48    Next, Dynek argues the court erred by granting the City's motion *in limine* No. 21, which sought to bar Taub from testifying about his prior accident on the Chicago Avenue bridge. Dynek argues that ruling prevented him from showing the danger of a gap between grating panels. The court excluded that evidence, explaining that Taub did not report his accident to the City and could not say where on the bridge the accident happened. We find no abuse of discretion. Due to Taub's vague testimony about the location of the accident, Dynek could not lay the necessary foundation for that testimony. See *Alwin v. Village of Wheeling*, 371 Ill. App. 3d 898, 917 (2007) ("Where evidence of prior accidents is offered to show the existence of a particular danger or hazard, a foundation must be laid establishing the similarity between the prior accidents and the present accident."). Moreover, Dynek presented evidence about the gap danger with the T.Y. Lin report's description of the longitudinal gap problems.

¶ 49    Next, Dynek argues the court erred by excluding certain statements Amsden allegedly made about metal grate bridges. Amsden, however, did not recall making those statements, which had appeared in a blog post before he was employed by the City. Moreover, the statements did not

pertain specifically to the Chicago Avenue bridge. We find no abuse of discretion by the trial court in excluding those irrelevant statements.

¶ 50    Next, Dynek complains that offers of proof should have been allowed for "all questions" asked of various witnesses. Dynek had forfeited review of this claim by failing to cite the record to identify any specific questions and supporting legal authority in violation of Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008). See *Sekerez v. Rush University Medical Center*, 2011 IL App (1st) 090889, ¶ 80.

¶ 51    Finally, Dynek argues the trial court erred by barring publicly available evidence that he discovered immediately before the trial. The excluded evidence concerned two lawsuits that involved bicycle accidents that did not occur on the Chicago Avenue bridge and did not involve the longitudinal gap design at issue in this case. In addition to the complaints, the excluded evidence about the two prior lawsuits included a discovery deposition, meeting minutes of a project for barrier free cycling, field notes and photographs, memoranda concerning metal grate bridges and bicycle safety, certain presentation materials, and e-mails, letters and postcards sent to the City regarding the danger of metal grate bridges to bicyclists. The trial court ruled that Dynek did not timely disclose this evidence, but Dynek argued that the City withheld this evidence, did not request these materials during discovery, and could not have been prejudiced by the admission of this evidence because the City could not have been unfairly surprised by its own project safety committee records, letters to its employees, the deposition testimony of its employee, the lawsuits it defended, and the evidence it possessed since 2002. Dynek argues he suffered severe prejudice by the exclusion of this evidence that proved the City negligently failed to tell Amsden, the City employee responsible for designating the Chicago Avenue bridge as a bike route, that this bridge

was unsafe and negligently put Benitez in charge of bridge safety even though he never investigated whether the Chicago Avenue bridge was safe for cyclists.

¶ 52    A decision to bar evidence is reviewed for an abuse of discretion. *Boyd*, 378 Ill. App. 3d at 67. Dynek disclosed his intention to use those publicly available documents after discovery had closed and days before the trial was set to begin. The trial court did not abuse its discretion by ruling that Dynek's use of those documents would have unfairly prejudiced the City, which had no notice that it had to defend against the facts in the excluded documents because Dynek never made those facts a part of his case and the City would not have assumed Dynek would want to use old documents, some of which were from 2002 to 2004, when his discovery requests went back only to 2005. We address below Dynek's allegations that the City withheld this evidence during discovery.

¶ 53                          D. Directed Verdict

¶ 54    Dynek argues the trial court erred by denying his motion for a directed verdict on the issue of the City's notice that the Chicago Avenue bridge was not safe for cyclists. We review the court's decision to deny a directed verdict *de novo*. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37.

¶ 55    Dynek was not entitled to a directed verdict on the issue of notice because there was evidence that the bridge did not present an unreasonable risk of harm. Specifically, Dynek testified that he had ridden over the bridge many times without incident. Also, the City presented evidence through Taub and Amsden and the cross-examination of Dynek that showed the condition that apparently caused his accident was in the center of the Chicago Avenue bridge, between opposing lanes of traffic, where bicyclists were not expected to ride.

¶ 56                                E. Closing Argument

¶ 57    Dynek argues that he is entitled to a new trial based on multiple improper statements by the City during closing argument. "[C]ounsel is afforded wide latitude in closing argument" (*Wilson v. Humana Hospital*, 399 Ill. App. 3d 751, 760 (2010)), and the trial court's determination on the propriety of closing argument will not be disturbed on review absent an abuse of discretion (*Thornhill v. Midwest Physician Center of Orland Park*, 337 Ill. App. 3d 1034, 1053 (2003)). A party's "[f]ailure to object to improper closing argument results in forfeiture of the objection on appeal." *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107, ¶ 121.

¶ 58    Dynek objected several times when the City described the effect of the statute of repose and emphasized that Dynek could not prevail if the longitudinal gap was the sole cause of his accident because the City could not be liable based on a design issue that was over 10 years old. Our review of the record establishes that the City's arguments were consistent with the court's proper pretrial ruling that the statute of repose prevented Dynek from arguing that the City could be strictly liable for the existence of the gap. Contrary to Dynek's argument on appeal, the City did not make the improper argument that the statute of repose defeated his entire case. Instead, the City argued that if the longitudinal gap caused the accident, the City could have been liable to Dynek only if he proved the City negligently designated the Chicago Avenue bridge as part of a bicycle route. Furthermore, the court informed the jurors that the court would instruct them on the law and they should disregard any arguments by counsel that were inconsistent with the court's instructions or not supported by the evidence. See *People v. Wilson*, 257 Ill. App. 3d 670, 688 (1993) (a new trial based on a party's description of the law is not warranted where the trial court gave the jury a curative instruction).

¶ 59     Dynek also contends the City improperly argued about matters not in evidence when the City told the jury not to speculate about any (1) medical bills because Dynek was not seeking recovery based on any medical bills and (2) lost wages because he failed to introduce any evidence on that matter other than his testimony that had he missed time off of work. Dynek's arguments lack merit. The record establishes that Dynek neither sought medical expenses nor presented evidence to support a claim of lost wages. The City's challenged remarks were proper and relevant to the issue of damages.

¶ 60     Dynek argues that no evidence supported the City's description of the accident, *i.e.*, that Dynek, instead of waiting with the stopped vehicular traffic, was trying to pass the stopped cars. The record, however, establishes that Dynek chose to cycle on Chicago Avenue, which did not have a designated bicycle lane, because it was a direct route to his office that enabled him to get to work faster. Moreover, Taub testified that, at the time of the accident, Dynek approached the bridge at a fast speed while vehicular traffic was stopped and rode between the stopped cars, trying to make his way through the stopped traffic—a maneuver typical of bicyclists during the morning rush hour. Taub also testified that after the accident, he saw Dynek lying on the westbound lane of the bridge and the front tire of his bike was lodged in a space between the eastbound and westbound lanes. We find that the City's challenged argument was a reasonable inference from the evidence presented at trial. See *Sikora v. Parikh*, 2018 IL App (1st) 172473, ¶ 60.

¶ 61     Dynek challenges other remarks the City made during closing argument, but the record establishes that he failed to preserve those issues for review by both making a timely objection and filing a sufficiently specific posttrial motion that contains the points relied upon and specifies the

grounds in support thereof. *Jacobs*, 2017 IL App (1st) 151107, ¶ 121; *Sekerez*, 2011 IL App (1st) 090889, ¶ 64.

¶ 62                                    F. Discovery and Sanctions

¶ 63     Dynek argues the court abused its discretion when it denied his motion for sanctions based on the City's alleged discovery violation. Specifically, Dynek contends the City failed to produce documents of prior lawsuits involving bicycle crashes on metal grate bridges and thereby violated the trial court's order to produce any documents giving the City notice of dangerous or defective conditions or safety issues concerning the Chicago Avenue bridge.

¶ 64     According to the record, Dynek's requests for documents during discovery included request No. 16, which sought "[a]ny and all Complaints filed against the City within ten years prior to the subject occurrence alleging cycling accidents caused by broken, defective, and/or dangerous grating on City owned bridges." The City objected to this request as overbroad and seeking irrelevant information. In his response letter to the City, Dynek asserted that the requested information was relevant and neither overbroad nor unduly burdensome. When Dynek later filed a motion to compel, however, he did not seek the production of documents responsive to request No. 16. Instead, he moved to compel the production of documents responsive to his request No. 13, which sought "[a]ny and all documents notifying the City of dangerous and/or defective conditions and/or safety issues with respect to the bridge identified in Plaintiff's Complaint from October 19, 2010 to the present." The court's order granted Dynek's motion to compel with respect to request No. 13 but did not mention request No. 16, which sought complaints alleging bicycle accidents on any of the City's metal grate bridges.

¶ 65    Ten days before the trial date, Dynek moved for sanctions, alleging the City had concealed two lawsuits involving bicycle accidents on the La Salle Street bridge and thereby violated the court's order regarding document discovery. Dynek also asserted during both a discovery conference and a hearing on the motion to compel that the City's counsel orally represented that "no lawsuits existed." The City responded that it had complied with the discovery order, Dynek failed to support his allegations about statements from the City's counsel with a transcript or bystander's report, and Amsden's deposition, which had occurred almost one year earlier, indicated that Dynek's counsel knew about a La Salle Street bridge lawsuit. The court denied Dynek's motion for sanctions, stating the court had consistently limited the scope of discovery to items relevant to plaintiff's alleged defect, *i.e.*, the broken grating bar that created a hole in the Chicago Avenue bridge. The court added that information about the La Salle Street bridge lawsuits had been publicly available and plaintiff's failure to timely learn about those lawsuits by conducting an online search earlier was not the City's fault. The trial court concluded that the facts did not indicate the City had concealed the La Salle Street lawsuits.

¶ 66    We agree with the trial court's ruling and reasoning and find that the trial court did not abuse its discretion by denying Dynek's motion for sanctions.

¶ 67                                 III. CONCLUSION

¶ 68    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 69    Affirmed.

| | |
|---|---|
| **Cite as:** | *Dynek v. City of Chicago*, 2020 IL App (1st) 190209 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-L-4508; the Hon. Janet Brosnahan, Judge, presiding. |
| **Attorneys for Appellant:** | Michael M. Viglione, of Ryan, Ryan & Viglione, of Waukegan, for appellant. |
| **Attorneys for Appellee:** | Mark A. Flessner, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellee. |